UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOWER AUTOMOTIVE
OPERATIONS USA I, LLC,
        Plaintiff,

v.                                         Civil Case No. 24-10144
                                             Honorable Linda V. Parker

VARI-FORM MANUFACTURING
INC.,
        Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 6)

This is a diversity action arising from Defendant's demand of a price increase to specialty manufactured auto parts. On January 17, 2024, Plaintiff Tower Automotive Operations USA I, LLC, ("Tower") filed this lawsuit against Defendant Vari-Form Manufacturing, Inc. ("VF") in the Michigan State court. (ECF No. 1.) This matter was subsequently removed to this court. (*See id.*) Plaintiff alleges two Counts of Breach of Contract. (ECF No. 1 ¶¶ 62-75, PageID. 21-23.)

Presently before the Court is Plaintiff's Emergency Motion for Entry of a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, or In the Alternative, An Expedited Preliminary Hearing, and Brief in Support filed on January 18, 2024. (ECF No. 6.) For the

reasons that follow, the Court grants the motion and enters a temporary restraining order.

## I.    Background

According to Plaintiff, VF supplies Plaintiff with specialty automotive parts, including tubular hydroform parts.  (ECF No. 6 at PageID. 210-11.)  Plaintiff uses the specialty parts to manufacture and supply auto part components for their original equipment manufacturer, Stellantis ("OEM").  VF is Plaintiff's only supplier for the specialty parts, Plaintiff is the sole supplier for the OEM.

Plaintiff alleges that the parties entered into a long-term fixed-price requirements contracts for the supply of the specialty parts due to the terms in the Purchase Orders ("PO").  (ECF No. 1 at PageID. 25.)  Under the agreement, VF agreed to supply all of Plaintiff's requirements.  Pursuant to Plaintiff's Terms and Conditions ("T&Cs"), VF accepted to be bound by the agreement by manufacturing and shipping the materials in response to Plaintiff's POs.  These terms included VF's obligation to supply Plaintiff's requirements for the duration of the OEM's program production life at the price agreed upon, $14.7576/unit.  (*Id.*)  The parts were meant for the production of the OEM's Jeep Wrangler vehicle.

In the Spring of 2023, VF became aware that the OEM was extending the life of the program, Jeep Wrangler, for which parts were being ordered ("the

Program"). On May 23, 2023, VF wrote to Tower seeking a price increase or a "re-quote." Tower declined to accept any requote from VF, citing the previously signed requirements contract.

On December 8, 2023, VF wrote to Tower requesting a new Purchase Order in place by January 2, 2024. (ECF No. 6 at PageID. 218.) On January 4, 2024, VF informed Tower that "we will not be able to support your upcoming requirements unless we receive your amended PP PO by Monday, January 8, 2024." (ECF No. 1 at PageID. 11.) The parties exchanged written correspondence and ultimately, VF stated that they would not deliver any parts until Tower paid a price increase of approximately 17%.

Tower argues that VF supplies Parts to Tower "just-in-time," which allows Tower to supply parts to Stellantis on a "just-in-time" basis, and VF's actions cause a break in the automotive supply chain that will shut down Tower's production of assemblies for Stellantis. (*Id.*) Tower alleges that a shutdown will cause them significant monetary damages and will significantly harm its relationship with its customer, Stellantis, for which monetary damages are not capable of compensating Tower. (*Id.*)

Tower further argues that a shutdown will cause irreparable harm for which monetary damages are not sufficient. (*Id.*) Specifically, it argues that shutdown will disrupt and impede the entire supply chain producing Stellantis' Jeep

3

Wrangler. (*Id.*) As production halts, Tower argues that they and its customers may be forced to idle thousands of workers, which will have catastrophic effects on the automotive supply chain and will adversely impact workers and communities across North America. (*Id.*) They now move for a temporary restraining order.

The Court held a hearing on January 23, 2024. Both parties presented compelling arguments.

## II.     Preliminary Injunction Standard

The Court applies the same standard to a motion for temporary restraining order as to a motion for a preliminary injunction. *See Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). A court must balance four criteria in deciding whether to issue a preliminary injunction or temporary restraining order:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harms to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)) (brackets omitted).

## III.     Applicable Law & Analysis

### A.     Plaintiff's Likelihood of Success on the Merits

Under Michigan Law, the party asserting breach of contract must demonstrate, by a preponderance of the evidence, that: (1) there was a contract between the parties, (2) a breach of its terms by the other party, and (3) damages resulting to the party claiming the breach.  *See Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

Requirements *Contract and Breach*

Plaintiff maintains that the Purchase Orders attached to its Complaint (Ex. 1, ECF No. 1,) together with Plaintiff's T&Cs being incorporated on the face of the Purchase Orders constitute a valid, binding, and enforceable contract, which required VF to supply specialty auto parts to Plaintiff at the agreed-upon price, for the quantities specified by Plaintiff, for the life of the designated programs.  *See* Mich. Comp. Laws § 440.2204(1).[1]  Notwithstanding VF's claims that the subject Purchase Order was extinguished in a 2019 bankruptcy in Canada, VF accepted the terms by supplying materials to Plaintiff, *see id*. § 440.2206,[2].  Further the Court

---

[1] Section 440.2204(1) states: "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

[2] Section 440.2206 provides:

> "(1) Unless otherwise unambiguously indicated by the language or circumstances . . . (b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt

(Cont'd . . .)

finds that a requirements contract exists based upon the language set forth in

Paragraph 3.A of the Terms and Conditions of the Purchase Order between the

parties. *See MSSC, Inc. v. Airboss Flexible Prods. Co.*, ——N.W.2d ——, 2023 WL

4476721(Mich. July 11, 2023); *see also Higuchi Int'l Corp. v. Autoliv, ASP, Inc.*, --

- F. Supp. 3d ---, 2023 WL 5334581 (E.D. Mich. 2023).  Given that the Court has

determined that a requirements contract exists, VF would have breached such

contract by failing to deliver parts to Plaintiff in the quantities specified.

### B.     Irreparable Harm

"An injury is irreparable if the harm is difficult to calculate."  *RECO Equip.,*

*Inc. v. Jeffrey S. Wilson*, No. 20-4312, 2021 WL 5013816, at *4 (6th Cir. Oct. 28,

2021).  A party's harm is "irreparable" when it cannot be adequately compensated

by money damages.  *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d

592, 603 (E.D. Mich. 2008).  "For an injury to constitute irreparable harm, it must

also 'be certain, great, and actual.'" *Cooper-Standard Auto. Inc. v. Daiking Am.*

*Inc.*, 568 F. Supp. 3d 846, 848 (E.D. Mich. 2021) (quoting *Lucero v. Detroit Public*

*Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).  "[L]oss of customer

goodwill" and damage to "competitive position" are harms that are difficult to

calculate.  *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001); *Collins*

---

promise to ship or by the prompt or current shipment of
conforming or nonconforming goods."

*Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2016).  A risk to

the plaintiff's reputation also threatens irreparable harm.  *See Salita Promotions*

*Corp. v. Ergashev*, 500 F. Supp. 3d 648, 654 (E.D. Mich. 2020) (citation omitted).

Plaintiff argues that the unique nature of the automotive supply chain makes

irreparable harm inevitable where a shutdown results from a supplier's refusal to

deliver component parts.  As Judge Edmunds found in *Cooper-Standard*: "The

'just-in-time' nature of the automotive supply chain provides potential for large-

scale disruption if just one of the down-line companies is unable to fulfill its

obligations under contract." *Cooper-Standard Auto. Inc.*, 568 F. Supp. 3d at 848

(citing *Eberspaecher N. Am., Inc. v. Nelson Glob. Prod., Inc.*, No. 12-11045, 2012

WL 1247174, at *6 (E.D. Mich. Apr. 13, 2021) (finding that "the potentially

catastrophic effects of a disruption in the supply chain of automotive parts is well

established in the case law of this court").

Plaintiff maintains that VF's failure to meet its obligations under their

agreement will impair Plaintiff's ability to provide components to its OEM

customers and, in turn, their ability to continue vehicle production.  Additionally,

Plaintiff maintains that it will suffer "incalculable" reputational harm and it will

likely lose goodwill.  (ECF No. 6 at PageID. 221.)

VF argues that any irreparable harm is the result of Tower's own conduct,

stating that they advised Tower more than seven months prior to the end of 2023

that VF would need a new purchase order by the end of the year. (*See* ECF No. 11

at PageID. 290.) VF further argues that the doctrine of laches precludes a finding

of irreparable harm. (*See id.*) Moreover, VF argues that Tower can pay the

increased price under protest, with reservation of the right to seek it as damages

through this lawsuit. (*See id.* at PageID. 293.)

In *Cooper-Standard,* this District rejected the argument that "[the buyer]

controls its own fate and can choose to pay the increased prices or suffer the

damages it describes." *Cooper-Standard Auto. Inc.*, 568 F. Supp. at 848.  Further,

the court noted that "while a buyer may have the responsibility to 'cover' in order

to lessen its damages, . . . this typically refers to a buyer's ability to procure similar

goods from a different distributor." *Id.* (quoting Mich. Comp. Laws §

440.2715(2)) (noting that the "unique nature of [seller's] products and the testing

and certification requirements of [buyer's]customers, it would not be possible to

secure alternate products from a different supplier."); Plaintiff maintains that VF's

parts are unique and not available on the open market, and they cannot find an

alternative source for these parts (ECF No. 6 at PageID. 210.)  Thus, cover would

not be possible.

Accordingly, the Court finds that Tower will suffer irreparable harm if

injunctive relief is not issued.

**C.    Balancing of Harms**

8

Tower maintains that VF will not suffer any harm if the Court orders them to continue to ship parts in accordance with the contract. The Court agrees. The "purpose of the [balance of harms] test is . . . to underscore the flexibility which traditionally has characterized the law of equity." *ACLU Fund of Michigan v. Livingston Cnty*, 23 F. Supp. 3d 834, 842–43 (E.D. Mich. 2014) (citation omitted). "It permits the district court, in its discretion, to grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where [it] at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Id.*

## D.   Public Interest

This District has concluded that a disruption to the automotive supply chain will harm the public's interest.  *Cooper-Standard*, 568 F. Supp.3d. at 848 (citing *Key Safety Sys., Inc. v. Invista, S.A.R.L., LLC*, No. 08-10558, 2008 WL 4279358, at *13 (E.D. Mich. Sept. 16, 2008); *Almetals Inc. v. Wickeder Westfalenstahl, GmbH*, No. 08-10109, 2008 WL 4791377, at *10 (E.D. Mich. Oct. 29, 2008).  Further, if the Court does find that a contract existed, "the public interest lies in preserving the enforceability of contracts."  *Neveux v. Webcraft Techs., Inc.*, 921 F. Supp. 1568, 1573 (E.D. Mich. 1996).

## V.   Conclusion

For the above reasons, and the reasons stated on this record this morning, the Court grants Plaintiff's request for a temporary restraining order.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for a temporary restraining order (ECF No. 6) is **GRANTED and became immediately effective on this date at approximately 10:30 am when this Court issued its ruling in open Court**.

**IT IS FURTHER ORDERED**, that Defendant shall deliver parts to Plaintiff for the next two weeks, until February 6, 2024.

**IT IS FURTHER ORDERED**, that Plaintiff shall post an undertaking within three (3) business days of the entry of this Order with the Clerk of the Court in the form of a bond, cash, or check in the sum of $30,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful restraint hereunder.

**IT IS FURTHER ORDERED,** that the payment shall be deposited by the Clerk, pursuant to Local Rule 67.1(2) of the Eastern District of Michigan, into an interest bearing-account and that the Clerk shall deduct from the account any fee authorized by the Judicial Conference of the United States.

                                        s/ Linda V. Parker
                                        LINDA V. PARKER
                                        U.S. DISTRICT JUDGE

 Dated: January 23, 2024